IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DANNEL M. MITCHELL,              )
No. R07374,                      )
                                 )
          Plaintiff,             )
                                 )
     vs.                         )          Case No. 16-cv-00238-SMY
                                 )
CRAIF FOSTER,                    )
MS. KLEIN,                       )
SETH TOWNSEND,                   )
JESSIA TOMPKINS,                 )
DR. AFUWAPE,                     )
MARY JOHN,                       )
SGT. SIMMONS,                    )
BRIAN ARENAS,                    )
MR. TREVERBAUGH, and             )
UNKNOWN PARTIES,                 )
                                 )
          Defendants.            )

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Dannel M. Mitchell is an inmate currently housed in Vandalia Correctional Center. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this action for deprivations of his constitutional rights with respect to allegations that prison officials retaliated against him for his litigation activities and hunger strike by subjecting him to excessive force and then failing to offer him needed medical and psychiatric care.

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless.  *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility."  *Id*. at 557.  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

According to Plaintiff's somewhat disjointed Complaint, on February 8, 2016, Plaintiff Mitchell sent unspecified "legal documents" to Health Care Administrator Klein.   Klein perceived that Plaintiff was attempting to intimidate her and went to prison authorities threatening to secure a judicial order of protection against Plaintiff.  A series of events followed related to whatever legal action Plaintiff initiated—possibly regarding the Americans with Disability Act and the Rehabilitation Act.

Two days later, Plaintiff was sent to the Health Care Unit where he saw Nurse Seth Townsend.  Townsend completed the paperwork for Plaintiff to see a doctor for peripheral neuropathy and sent Plaintiff back to his cell (Plaintiff was never been called back to see a physician). Shortly thereafter, Officer Simmons and three unidentified correctional officers arrived to take Plaintiff to segregation for threatening Nurse Townsend.  According to Simmons, Townsend (falsely) reported that Plaintiff had stated that he had filed a lawsuit and that after it was over prison officials would have to give him what he wanted.

After two days in segregation, Plaintiff was visited by Officer Simmons who asked whether Plaintiff was still on a hunger strike.  In the vicinity of other inmates and staff, Simmons commented that he was tired of Plaintiff's "HIV-infected, faggot ass."  Plaintiff was then ordered to cuff-up and Simmons and unidentified correctional officers took Plaintiff into another room and closed the door.  Two officers "forcefully" seated Plaintiff on a bench.  Simmons then asked Plaintiff what his "bottom line" was regarding the hunger strike.  Plaintiff explained that he was tired of racism and oppression at the institution, to which Simmons indicated he was tired of "that black history shit." Simmons then slapped Plaintiff's face and moved on to punching him for an estimated ten minutes while Plaintiff remained handcuffed between two officers.  Nurse Townsend entered the room and Simmons stopped beating Plaintiff, but neither person responded to Plaintiff's request for medical attention.  Townsend even opined that Plaintiff had gotten what he deserved.  Townsend went on to question Plaintiff about his hunger strike.

Simmons later had Plaintiff locked in a suicide watch room, stating, "This is for that damn lawsuit, and by the way enjoy your stay nigger."  Plaintiff was left naked in the cold cell for four and a half days with only a blanket-like cloth.  Despite asking to see the Crisis Team, he was seen only by Nurse Townsend and Nurse Tompkins, "to no avail."  Both nurses responded that there was nothing for them to do and that Plaintiff should just take his medication.  Plaintiff asserts that Nursing Supervisor Mary John[1] has failed to ensure nurses are properly trained for a crisis, and, as a supervisor, she must bear responsibility.

A "hearing committee," including Defendant Arenas, purportedly punished Plaintiff with an "unusual" and "harsh" sentence—no other details are offered.

---

[1] "Mary John" is named as a defendant, but the narrative of the complaint refers to "Mary Johnson."  The Court assumes they are one and the same person.

At an unspecified time, Plaintiff was seen by Dr. Afuwape, who ignored all of Plaintiff's medical concerns—which are not described.

Plaintiff filed grievances (presumably regarding the aforementioned events), but his counselor, Mr. Treverbaugh, and another officer did not respond.

The Complaint begins with a reference to the Americans with Disability Act and Rehabilitations Act and concludes with a statement that Plaintiff is convinced that all of the defendants were retaliating against him, amounting to cruel and unusual punishment.  He seeks monetary damages and "S.C.C. credit."[2]

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

**Count 1:**  **Defendants violated the Americans with Disabilities Act and Rehabilitation Act;**

**Count 2:**  **Defendant Klein retaliated against Plaintiff for his litigation activities, in violation of the First Amendment;**

**Count 3:**  **Defendant Townsend, acting in retaliation for Plaintiff's litigation activities, denied Plaintiff a consultation with a physician regarding Plaintiff's neuropathy, in violation of the First and Eighth Amendments;**

**Count 4:**  **Defendant Townsend, acting in retaliation for Plaintiff's litigation activities, falsely reported that Plaintiff had threatened him, thereby setting Plaintiff for punishment, in violation of the First Amendment;**

**Count 5:**  **Defendant Simmons retaliated against Plaintiff for his litigation activities and hunger strike by revealing that Plaintiff had HIV, in violation of the First and Eighth Amendments;**

---

[2] The Court is unfamiliar with "S.C.C. credit," but is skeptical that that is an available remedy. Only time will tell.

**Count 6:**  **Defendant Simmons and three unknown parties, acting in concert, used excessive force against Plaintiff in retaliation for Plaintiff's litigation activities and hunger strike, in violation of the First and Eighth Amendments;**

**Count 7:**  **Defendants Simmons, three unidentified parties and Defendant Townsend failed to get Plaintiff medical care after he was beaten, in violation of the Eighth Amendment;**

**Count 8:**  **Defendant Simmons placed Plaintiff on suicide watch—naked in a cold, stripped-down cell—in retaliation for his litigation activities, in violation of the First and Eighth Amendments;**

**Count 9:**  **Defendant John failed to ensure nurses were properly trained, in violation of the Eighth Amendment;**

**Count 10: Defendant Arenas imposed excessive and unusual punishment, in violation of the Eighth Amendment;**

**Count 11: Defendant Dr. Afuwape denied Plaintiff medical care, in violation of the Eighth Amendment;**

**Count 12: Defendant Treverbaugh did not respond to Plaintiff's grievances; and**

**Count 13: All Defendants, individually or in conspiracy, retaliated against Plaintiff for his litigation activities, in violation of the First Amendment.**

Any claims intended but not recognized by the Court should be considered dismissed without prejudice as insufficiently pleaded under the *Twombly* pleading standard.

### "Motion to Enter Information"

In addition to the Complaint, Plaintiff has filed a "Motion to Enter Information" (Doc. 5). The document is captioned for the Circuit Court for Fayette County, not this federal court. Assuming that Plaintiff mistakenly captioned the motion, the Court offers the following analysis.

Plaintiff refers to an "utmost emergency" stemming from the "medical neglect" of his HIV related depression, anxiety, P.T.S.D. and bi-polar diseases—for which he is taking medications. He further states that he is "in danger of a substantial risk of imminent danger of

personal injury caused by deliberate indifferences consisting of irreparable harm because of [Warden] Foster et al., conscience neglect of my care, custody, treatment, and rehabilitation." He requests that this action be resolved on an expedited basis.

The Court recognizes that Plaintiff has medical and psychiatric ailments that require medical care, but neither the Compliant nor the motion suggest that a temporary restraining order is warranted.  A temporary restraining order ("TRO") is an order issued without notice to the party to be enjoined that may last no more than 14 days.  FED.R.CIV.P. 65(b)(2).  A TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  FED.R.CIV.P. 65(b)(1)(A).  Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmerv. Brennan*, 511 U.S. 825, 845 (1994).  Here, although the Complaint and motion are too vague to support a TRO, the Court remains open to a motion for injunctive relief or a motion for preliminary injunction under Federal Rule of Civil Procedure 65.

Plaintiff's request for an expedited resolution of this case will not be granted, either.  The Complaint does pertain in some respect to medical and psychiatric care, but not necessarily to Plaintiff's treatment for HIV.  Furthermore, the Complaint only seeks monetary damages and the restoration of some form of credits, neither of which relate to medical or psychiatric care. Accordingly, Plaintiff's "Motion to Enter Information" (Doc. 5) will be denied in all respects, but without prejudice to Plaintiff requesting similar relief in the future.

### Discussion

Each claim and defendant will be addressed, albeit not necessarily in sequential order.

### *Count 1*

Count 1 is premised upon the reference in the complaint to the Americans with Disabilities Act ("ADA") and Rehabilitation Act.   Title II of the ADA, 42 U.S.C. § 12101 *et seq.,* provides that "no qualified individual with a disability shall, because of that disability ... be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Likewise, the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* prohibits discrimination by entities receiving federal funding (such as state prisons), against qualified individuals on account of their disability.  The complaint does not provide any basis for inferring a claim under either statute; therefore Count 1 must be dismissed without prejudice under the *Twombly* pleading standard.

### *Count 13 and Defendant Foster*

Count 13 is based on Plaintiff's assertion that he is convinced that all of the defendants were retaliating against him, amounting to cruel and unusual punishment.  Although Plaintiff may be convinced, that assertion, by itself, does not state a retaliation claim or a basis for a conspiracy theory of liability.

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000).  "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000).  In order to state a claim for retaliation for exercising one's First Amendment right, a plaintiff must demonstrate that: "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and

(3) his speech was at least a motivating factor" behind the retaliatory actions. *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006).

Participation in a lawsuit is certainly protected by the First Amendment. *See Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). Although there is no controlling case law specifically discussing hunger strikes, a hunger strike appears to be protected under the First Amendment. *See Stefanoff v. Hays County, Tex.,* 154 F.3d 523, 527 (5th Cir. 1998) (hunger strike may be protected activity if aimed at conveying a particularized message); *see also Texas v. Johnson,* 491 U.S. 397 (1989) (discussing expressive conduct). Nevertheless, Plaintiff's blanket assertion that all defendants acted out of retaliation is insufficient under the *Twombly* pleading standard to state a claim.

Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept*., 636 F.3d 293, 304–05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id*. at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir.1999)). Here, Plaintiff's Complaint does not offer any suggestion of a meeting of the minds; rather, he offers only a chronology of events that cannot reasonably be said to suggest a meeting of the minds.

Because no viable, overarching retaliation or conspiracy claim has been stated, Defendant Warden Foster must be dismissed from this action, as there is no other allegation against him in

the Complaint.  Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).  Allegations that senior officials were personally responsible for creating the policies, practices and customs that caused a constitutional deprivation can suffice to demonstrate personal involvement for purposes of Section 1983 liability.  *See Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002).  However, the *respondeat superior* doctrine—supervisory liability—does not apply to actions filed under 42 U.S.C. § 1983. *See,* e.g., *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).  Moreover, merely naming a defendant in the case caption is insufficient to state a claim.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).   Accordingly, Count 13 and Defendant Foster will be dismissed without prejudice.

### Count 2

In Count 2, it is alleged that Health Care Administrator Klein went to prison authorities threatening to secure an order of protection against Plaintiff, after which all of the other events at issue occurred.   Plaintiff contends Klein retaliated against him in violation of the First Amendment.

The Complaint offers no other reference to Klein and no suggestion of a conspiracy—nothing from which to infer that Klein had anything to do with subsequent events.  Threatening to secure an order of protection, by itself, is not retaliation nor does it violate the Constitution. Klein could only ask a court to consider a protective order'  The order would have to be legally justified and would be solely the court's decision.  For these reasons, Count 2 and Defendant Klein will be dismissed without prejudice.

*Count 3 and 4*

Counts 3 and 4 involve events that are chronologically linked.  Count 3 pertains to Nurse Seth Townsend failing to follow through and arrange for Plaintiff be seen by a physician regarding Plaintiff's neuropathy.  Plaintiff further alleges that Townsend falsely reported that Plaintiff had threatened him during that consultation (which is the basis for Count 4).  Plaintiff perceives that in both instances, Townsend was motivated by retaliation, in violation of the First Amendment, and that the denial of a consultation with a physician violated the Eighth Amendment.

The Complaint indicates that Townsend had knowledge of Plaintiff's litigation activities in that Townsend reported that Plaintiff had attempted to leverage a pending lawsuit to secure treatment.  That perceived threat lead to a disciplinary charge being lodged against Plaintiff, which was presumably why Townsend falsely reported that a threat had been made. Consequently, there is a basis for retaliation claims in Counts 3 and 4.

Regardless of whether Townsend acted in retaliation, prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  At this early juncture, it is assumed that neuropathy qualifies as a serious medical need—a conclusion further supported by Nurse Townsend's acknowledgment that Plaintiff needed to be seen by a physician.  Whether Townsend failed to actually set up an appointment and his motivation cannot be determined based solely on the Complaint.  Therefore, the Eighth Amendment claim in Count 3 must also proceed.

### *Count 5*

Officer Simmons' knowledge of Plaintiff's litigation activities gained from speaking with Nurse Townsend and Simmons' awareness of Plaintiff's hunger strike form the basis for the retaliation claim in Count 5.  It is alleged that, in the presence of other inmates and staff, Simmons stated he was tired of Plaintiff's "HIV-infected ass."  Again, there is a basis for a First Amendment retaliation claim.  As too many cases filed in the district court reflect, it is not uncommon for individuals who are HIV positive to be subject to physical harm, particularly in the prison setting.

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment.  U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010).  Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety.  *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012).  Acts or omissions for the very purpose of causing harm or with knowledge that harm will result—like setting Plaintiff up to be harmed due to his HIV status—qualify as deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  For these reasons, Count 5 states colorable First and Eighth Amendment claims and shall proceed.

### *Counts 6 and 7*

The allegations that Officer Simmons and unidentified individuals, acting in concert, beat Plaintiff and then, along with Nurse Townsend, failed to get him medical care adequately state Eighth Amendment claims for using excessive force and being deliberately indifferent to a serious medical need.  Furthermore, if Defendants acted in retaliation for Plaintiff's litigation activities and hunger strike, as alleged, they would face liability under the First Amendment.

Counts 6 and 7 shall, therefore, proceed.  Of course, the unidentified individuals will have to be identified and named in an amended pleading before they can face liability.

### Count 8

It is further alleged in Count 8 that Officer Simmons placed Plaintiff on suicide watch— naked in a cold, stripped-down cell—in retaliation for his litigation activities.  Although the Complaint suggests Plaintiff was in crisis (*see* Count 9), "[o]therwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000).  Liability may stem from a retaliatory motivation or consideration in a defendant's mind that favors or pushes him toward action.  *See Hasan v. United States Dept. of Labor,* 400 F.3d 1001, 1006 (7th Cir. 2005).   As Plaintiff alleges that Simmons specifically stated that placement on suicide watch was "for that damn lawsuit," a viable claim has been pled.  Count 8 shall proceed.

### Count 9 and Nurses Seth Townsend and Jessia Tompkins

Count 9 is premised upon the assertion that Nursing Supervisor Mary John failed to ensure her nursing staff was properly trained to deal with a crisis—presumably referring to how Plaintiff was treated or not treated on suicide watch.  Because it is unclear how nursing staff failed to properly treat Plaintiff, the claim is too vague under the *Twombly* pleading standard. Moreover, no individual involvement by John has been alleged and supervisory liability does not apply to actions filed under 42 U.S.C. § 1983.  *See Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005); *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).

The Complaint describes Nurse Townsend and Nurse Jessia Tompkins treating Plaintiff "to no avail."  That vague statement does not even suggest a deliberate indifference claim, let alone a basis for the claim against Nursing Supervisor John.  Because Nurse Tompkins is not

named in any other count, she will be dismissed without prejudice.  Nurse Townsend has been named in other viable counts and shall remain as a defendant in this case.  However, Count 9 and Defendant Mary John will be dismissed without prejudice.

### Count 10

Count 10 against Defendant Arenas is facially insufficient based on the bald assertion that a hearing committee, including Arenas, punished Plaintiff with "unusual" and "harsh" sentence."  As such, Count 10 and Defendant Arenas will be dismissed without prejudice.

### Count 11

Count 11 is vague and fails to state a colorable claim.  The Complaint merely states that Dr. Afuwape ignored all of Plaintiff's medical concerns, without indicating what Plaintiff's medical concerns were.  Therefore, Count 11 and Defendant Afuwape will be dismissed without prejudice.

### Count 12

Count 12 is based on the allegation that Counselor Treverbaugh failed to respond to Plaintiff's grievance.   An inmate does not have a substantive due process right to a grievance procedure.  *See Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1995).  Out of an abundance of caution, Count 12 and Counselor Treverbaugh will be dismissed without prejudice.

### Miscellaneous Motions

Plaintiff moves for the revocation of the fines imposed on him as part of his criminal sentence (Doc. 3).  He wants this federal court to alter his state criminal sentence to eliminate the fine.  Plaintiff fears that he will not be able to afford to pay his fine and the filing fee for this case, and he argues that having to pay a fine will hinder his rehabilitation and reentry into society.   Plaintiff has also filed a second document captioned "Motion to Enter Information"

(Doc. 8).   Plaintiff generally asserts that Officer Simmons knew he was gay, which is clear in the complaint.  Both motions are captioned for filing in the Circuit Court for Fayette County, Illinois, not this federal court.  Even if Plaintiff intended those documents to be filed in this court, they (Docs. 3, 8) will be denied.  This federal court has no authority to alter Plaintiff's state fine for equitable reasons, and Plaintiff has been granted pauper status in this Court, so the motion is moot in that sense.  Additionally, unsworn assertions of fact are not filed in the record. If, for example, a dispositive motion is filed, Plaintiff may file a response supported by sworn affidavits.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNTS 1-2 and 9-13**, and Defendants **CRAIG FOSTER, MS. KLEIN. MARY JOHN, BRIAN ARENAS, DR. AFUWAPE, and MR. TREVERBAUGH** are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNTS 3-8** shall **PROCEED** against Defendants **SETH TOWNSEND, SGT. SIMMONS and UNIDENTIFIED PARTIES.**

**IT IS FURTHER ORDERED** that Plaintiff's motions for injunctive relief, revocation of fines, and entry of information into the record (Docs. 3, 5, 8) are **DENIED**.

The Clerk of Court shall prepare for Defendants **SETH TOWNSEND and SGT. SIMMONS**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will

require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Defendant **UNKNOWN PARTIES** until such time as Plaintiff has identified them by name in a properly filed amended complaint.   Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings, including consideration of Plaintiff's motion for counsel.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* may have been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that all unpaid costs taxed against Plaintiff shall be paid from any recovery Plaintiff receives in this case.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 13, 2016**

s/ STACI M. YANDLE
**United States District Judge**
